ACCEPTED
15-25-00107-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/20/2025 4:21 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00107-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/20/2025 4:21:29 PM
CHRISTOPHER A. PRINE
~~Clerk~~

## IN THE FIFTEENTH COURT OF APPEALS
## AUSTIN, TEXAS

---

**TEXAS DEPARTMENT OF INSURANCE, AND CASSIE BROWN, IN HER CAPACITY AS COMMISSIONER OF THE TEXAS DEPARTMENT OF INSURANCE,**

*Appellants,*

*v.*

**TEXAS LAND TITLE ASSOCIATION,**

*Appellee.*

---

On Appeal from the 345th Judicial District Court
Travis County, Texas
Cause No. D-1-GN-25-001663

---

**APPELLEE'S UNOPPOSED EMERGENCY MOTION FOR TEMPORARY RELIEF UNDER TEX. R. APP. P. 29.3**

---

Appellee, Texas Land Title Association ("TLTA"), files this unopposed request for emergency relief on the grounds set forth below.

## I.     SUMMARY OF EMERGENCY MOTION

Appellants issued a rate order on February 6, 2025, (the "Order")[1] reducing title insurance premium rates by 10% effective July 1, 2025.  The Order states that the rate

---
[1] Attached hereto as Exhibit A.

- 1 -

4046730.v2

cut is effective starting on July 1, 2025. TLTA sought a temporary injunction, alleging that the Order would cause irreparable harm to the Texas title insurance industry, represented by TLTA. TDI disputed TLTA's claim.

After a two-day hearing on May 27 and 28, 2025, on TLTA's requested temporary injunction and the Texas Department of Insurance's ("TDI's") plea to the jurisdiction, the trial court granted TLTA's requested temporary injunction preventing the proposed reduced rates from going into effect on July 1, 2025, until further orders of the court. The trial court also granted TLTA's petition for review of the TDI Order, remanded the matter to TDI for further proceedings, and made other orders regarding the merits of the Order.

As an arm of the State, Appellants' Notice of Appeal[2] to this Court has the effect of superseding (staying) the injunction. Due to the timing of the filings of the notice of appeal, this stay would come less than two weeks before the rate decrease would otherwise go into effect. *See In Re Tex. Educ. Agency*, 619 S.W.3d 679, 680 (Tex. 2021). TLTA seeks emergency relief from this Court—i.e., reinstating the temporary injunction or lifting the stay of the temporary injunction during the pendency of this appeal to preserve the status quo and prevent irreparable harm to TLTA and its

---

[2] Attached hereto as Exhibit B.

4046730.v2

members. *See id.* (confirming a court of appeals' power to stay a state agency's supersedeas and reinstate the injunction under Tex. R. App. P. 29.3).

The requested relief is necessary to preserve the parties' rights pending the appeal. On June 12, 2025, TDI notified Texas title agents and companies that the Order is enjoined and to use the prior rates until further notice. *See* June 12, 2025 TDI Notice, available at https://content.govdelivery.com/accounts/TXINSUR/bulletins/3e4c842, attached hereto as Exhibit C. Given this statewide current guidance from TDI being relied on by title companies, it would be very difficult for Texas title agents and underwriters to now revert to the approved reduced rates and honor the Feb 6th rate Order on July 1st due to the time it takes to implement rate changes through pricing software and otherwise.

The relief sought by TLTA in this motion would, while leaving in place the stay of the trial court's ruling on TLTA's Petition for Review, the stay of the trial court's ruling remanding the matter for further proceedings, and the stay of the trial court's rulings on other issues in the trial court's order, would, in a surgical emergency order, lift the stay of the trial court's temporary injunction solely concerning the rate order going into effect on July 1st. This would leave in place the stay in the Court of Appeals resulting from Appellant's filing of the notice of appeal on the trial court's rulings now before the Court, while preserving the rights of the parties under the trial court's temporary injunction.

4046730.v2

Appellants do not oppose the relief sought in this motion. They filed a Notice of Appeal to preserve their appellate rights on the merits, but they do not oppose TLTA's request for the Feb 6, 2025 rate Order to be stayed during the pendency of this appeal.

## II.    FACTUAL BACKGROUND

In Texas, title insurance premium rates are set by the Texas insurance commissioner. *See generally,* Tex. Ins. Code, Chapter 2703.   In this appeal, the Commissioner reduced premium rates by 10% after a public hearing held January 23, 2025, and a hearing announcing the reduction on February 6, 2025.   After the Commissioner denied its motion for rehearing, TLTA filed suit in Travis County district court. TLTA sought declaratory relief under Tex. Gov't Code § 2001.038, and also an appeal (petition for review) of the rate order under Tex. Ins. Code § 36.202. TLTA also sought a temporary injunction to forestall application of the Order on grounds that it would cause irreparable harm to an industry that was already suffering the effects of a sharp and persistent market downturn.  In response, TDI filed a plea to the jurisdiction and a response to the request for injunction.

A two-day hearing was held on the temporary injunction and on TDI's plea to the jurisdiction on May 27-28 in the trial court.

4046730.v2

Two days following the close of evidence the trial court entered an order granting TLTA's the temporary injunction. However, the court also granted TLTA's petition for review and remanded the Order to TDI for further proceedings. The trial court also ruled on other merits issues and set the remainder of the case for trial on December 1, 2025.

Appellants filed their Notice of Appeal on June 19, 2025, which had the effect of automatically superseding (or staying) the injunction. Their Notice of Appeal also stayed the trial court's orders granting the Petition for Review, remanding the case for additional proceedings, ruling on other merits issues, and setting the case for a December hearing. The stay of the trial court's granting of TLTA's requested temporary injunction is the only issue included in this emergency motion under Tex. R. App. P. 29.3.[3]

TLTA seeks an emergency ruling granting temporary relief under Tex. R. App. P. 29.3 to remove the stay of the trial court's temporary injunction that resulted from TDI's filing of its notice of appeal. TLTA seeks this removal of the stay to preserve TLTA's and its member's rights under the trial court's temporary injunction until disposition of this appeal. TLTA does not seek an emergency ruling granting temporary relief in this motion from the stay in the Court of Appeals of the

---

[3] The trial court's Order Granting Plaintiff's First Amended Application For Temporary Injunction is attached hereto as Exhibit D.

4046730.v2

trial court's rulings on TLTA's petition for review, on the trial court's remand to the Department for additional proceedings, or of the stay in the Court of Appeals of any of the other issues addressed by the trial court in her May 30, 2025, Order Granting Temporary Injunction.

## III.  ARGUMENTS AND AUTHORITIES

Tex. R. App. P. 29.3 applies to interlocutory appeals such as this one and allows the court of appeals to enter temporary orders to preserve the parties' rights pending disposition of the appeal. It is especially appropriate in cases where no supersedeas bond is required because the appealing party is an arm of the State as here. *See In Re Tex. Educ. Agency*, 619 S.W.3d 679, 680 (Tex. 2021). The Texas Supreme Court in *In Re Tex. Educ. Agency* explained that an order by the court of appeals staying the effect of the automatic supersedeas "preserve[d] the status quo and prevent[ed] irreparable harm." 616 S.W.3d at 680.

The requested emergency order is necessary in this instance to preserve the parties' rights until disposition of this pending appeal.  The reduced rates approved in the Order will take effect on July 1, 2025, unless stayed by the trial court's injunction or an emergency order from this Court. For title companies, implementing a rate change, re-programming pricing software, and trying to implement the math of the new rates in Ex. A of the rate Order, all takes time. Recognizing this, TDI issued guidance on its website before filing its notice of appeal that, due to the temporary

injunction, the pre-Order rates should be used even on and after July 1. The discord that would result between Appellants' public guidance to title companies and the legal effect of the stay of the trial court's temporary injunction caused by Appellant's fling of its notice of appeal, creates a need for emergency relief to preserve the parties' rights pending disposition of this appeal. And again, Appellants do not oppose the emergency relief sought herein.

## IV.    CONCLUSION AND PRAYER

For the reasons stated herein, Appellee TLTA prays for emergency relief from this Court under TRAP 29.3 lifting the stay resulting from Appellant's filing of their notice of appeal on June 19, 2025 from the trial court's temporary injunction. Alternatively, TLTA prays for emergency relief from this Court under TRAP 29.3, approving during the pendency of this appeal the temporary injunction approved by the trial court in her May 30, 2025, Order Granting Temporary Injunction.

4046730.v2

Respectfully submitted,

By  /s/ Ray Chester
    Ray C. Chester
    State Bar No. 04189065
    Andrew M. Edge
    State Bar No. 24071446
    McGinnis Lochridge LLP
    1111 W. 6th Street, Bldg. B,
    Suite 400
    Austin, Texas 78703
    (512) 495-6000
    (512) 495-6093 (Fax)
    rchester@mcginnislaw.com
    aedge@mcginnislaw.com

    ***ATTORNEYS FOR APPELLEE***

4046730.v2

## VERIFICATION

I am lead counsel for Appellee, Texas Land Title Association, in Cause No. D-1-GN-25-001663. I was present at the Temporary Injunction hearing on May 27-28, 2025, and for all other proceedings in this matter. I have read the foregoing Emergency Motion for Temporary Relief Under Tex R. App. P. 29.3, and every factual statement made therein is within my personal knowledge and is true and correct. Additionally, with regard to the attached exhibits, I declare as follows:

Exhibit A: This is a true and correct copy of the Texas Department of Insurance Official Order No. 2025-9125, dated February 6, 2025.

Exhibit B: This is a true and correct copy of Appellants' Notice of Appeal to the Fifteenth Court of Appeals, filed in the trial court proceeding, Cause No. D-1-GN-25-001663, dated June 19, 2025.

Exhibit C: This is a true and correct copy of the Texas Department of Insurance notice that rates under Order 2025-9125 will not go into effect on July 1, 2025.

Exhibit D: This is a true and correct copy of the trial court's Order Granting Texas Land Title Association's First Amended Application for Temporary Injunction, dated May 30, 2025.

My name is Ray Chester, my date of birth is August 26, 1955, and my address is 1111 W. 6th Street, Bldg. B, Suite 400, Austin, Texas 78703. I declare under penalty of perjury that the foregoing is true and correct.

4046730.v2

This Verification is made under Tex. Civ. Prac. & Rem. Code 132.001 in support of Texas Land and Title Association's Emergency Motion For Temporary Relief Under Tex. R. App. P. 29.3.

Executed in Travis County, State of Texas on June 20, 2025,


_____
Ray Chester

4046730.v2

**CERTIFICATE OF CONFERENCE**

I hereby certify that pursuant to Tex. R. App. P. 29.3, on the 20th day of June, 2025, I conferred with James Brazell, counsel for Appellants, and Appellants do not oppose the relief sought in this motion.

Ray Chester
_____
Ray Chester

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of June, 2025, I electronically filed the above and foregoing document, which will send notification of such filing to:

James Z. Brazell
Administrative Law Division
Office of the Attorney General of Texas
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
James.Brazell@oag.texas.gov

Ray Chester
_____
Ray Chester

4046730.v2

# EXHIBIT A

No. **2025-9125**

**Official Order**
**of the**
**Texas Commissioner of Insurance**

**Date: 02/06/2025**

**Subject Considered:**

Title Insurance Basic Premium Rates Hearing
Docket No. 2851
Petition Nos. P-1124-02 and P-1124-03

**General Remarks and Official Action Taken:**

The subjects of this order are the two requests to consider title insurance basic premium rates under Insurance Code § 2703.202 filed by the Texas Land Title Association (TLTA) and the Office of Public Insurance Counsel (OPIC). The commissioner sets the title insurance basic premium rates by order following a public hearing. After consideration of each matter presented in writing and orally at a public hearing, the commissioner fixes a new title insurance premium rate.

The following findings of fact and conclusions of law are adopted.

**Findings of Fact**

1. On September 16, 2024, the Texas Department of Insurance (TDI) published its 2024 Title Rate Report on its website. The report provides rate indications based on title experience data ending in calendar year 2022 ranging from −4.9% to −15.4%.

2. On November 1, 2024, TDI received TLTA's request to consider the title insurance basic premium rates. TLTA proposed that there be no change in the rates. Alternatively, if rates are decreased, TLTA proposed that the decrease should not be more than −1.0% and effective on July 1, 2025. In a supplemental submission provided to TDI on January 14, 2025, TLTA concluded that a rate decrease in the

range of 0.0% to −4.7% is reasonable, but in light of data it collected on a sampling of 37 title agents' 2023 experience, suggested that a 0.0% change is most appropriate.

3. TDI assigned TLTA's request for a public hearing Petition No. P-1124-02.

4. TDI issued a notice of public hearing on TLTA's request. The notice was posted on TDI's website on November 8, 2024, and published in the November 22, 2024, issue of the *Texas Register* (49 TexReg 9608).

5. On November 12, 2024, TDI received OPIC's request to consider the title insurance basic premium rates. OPIC requested that TDI hold the hearing requested by TLTA, but disagreed with TLTA that the basic premium rates should not be changed. In a supplemental submission provided to TDI on January 22, 2025, OPIC concluded that a rate decrease in the range of −8.9% to −19.0% is indicated based on historical experience and is actuarially sound.

6. TDI assigned OPIC's request for a public hearing Petition No. P-1124-03.

7. Because of a forecasted snowstorm for Austin and much of the state, the commissioner postponed the hearing that was initially scheduled for January 21, 2025, until January 23, 2025, under Government Code § 551.0411.

8. On January 23, 2025, the commissioner conducted a public hearing under Insurance Code § 2703.202(c), under Docket No. 2851. Interested people attended the hearing and had the opportunity to present written and oral testimony. TLTA, OPIC, and TDI staff presented exhibits, analyses, and rate calculations summarizing and referencing the reports that each had previously submitted to the commissioner.

9. Under Insurance Code § 2703.152, when fixing a premium rate, the commissioner must "consider all relevant income and expenses of title insurance companies and title insurance agents attributable to engaging in the business of title insurance." The premium rates must be "reasonable as to the public" and "nonconfiscatory as to title insurance companies and title insurance agents." Insurance Code § 2703.152.

Income and Expenses of Title Insurance Companies and Agents

10.   The reports from TLTA, OPIC, and TDI each included a description of the actuarial methods they used to determine whether a change to the basic premium rates is indicated.

11.   All three reports included rate indications determined using the loss ratio method. The loss ratio method takes into account the title industry's expense ratio, the loss and loss adjustment expense (LAE) ratio, the catastrophe loss provision, and the profit provision.[1]

   a.   To determine the expense ratio, the reports compiled data on expenses related to the business of title insurance and divided that by the amount of premium collected. The expense ratio provides for all reasonable costs associated with a title insurance policy other than profits and losses.

   b.   To determine the loss and loss adjustment expense ratio, the reports compiled data on losses and loss adjustment expenses and divided that by the amount of premium collected.

   c.   The catastrophe loss provision is selected to account for the possibility of the market experiencing widespread losses that are significantly higher than what has been experienced historically.

   d.   To determine the profit provision, the reports first determined a target cost of capital. Returns from investments are subtracted from the target cost of capital and then adjusted for the industry's premium-to-capital leverage ratio.

   e.   To determine the expense ratio, the loss and loss adjustment expense ratio, and the catastrophe loss provision, TLTA, OPIC, and TDI used data submitted to TDI under Insurance Code § 2703.153.

---

[1] The formula for the rate indication using the loss ratio method is:

$$[(L+E+C)/(1-P)] - 1$$

Where L = loss and loss adjustment expense ratio = losses and LAE/premium; E = expense ratio = expenses/premium; C = catastrophe loss provision; and P = underwriting profit provision = profit/premium.

12.    The reports from TLTA, OPIC, and TDI each contained multiple rate indications using the loss ratio method. The various rate indications make up the reports' ranges. The main difference in the indications are from the profit provisions and experience periods used.

a.    For the profit provision, TLTA used 12.0%, OPIC used 7.0%, and TDI used 11.0%. These differences are mainly from the values used for the target cost of capital and the size premium adjustments. OPIC asserts that Texas title insurance is less risky and less variable than the average line of property and casualty insurance, so a lower cost of capital is reasonable, and no size premium adjustment is needed.

b.    OPIC and TDI provided indications that used 5-year, 10-year, 15-year, and 20-year experience periods; each ending in 2022. In general, a shorter period tends to be responsive to recent market conditions in the experience period, whereas a longer period tends to capture a broad spectrum of economic conditions.

c.    TLTA's indications used a 3-year period ending in 2019, a 5-year period ending in 2019, and a 20-year period ending in 2022. TLTA stated its experience periods avoid giving too much weight to the pandemic periods of 2020–2022, which were outlier years.

d.    TLTA also provided an indication using a standalone estimate of the 2023 expense ratio because it asserted that the available data through 2022 does not include the full impact from the downturn in the title insurance market that started in the fall of 2022. Because TDI has not received all 2023 data under Insurance Code § 2703.153,[2] TLTA surveyed 37 agents that it said make up about 50% of total Texas premiums and used that data to estimate the expense ratio for 2023.

e.    TLTA also provided an indication using linear regression. It created a scatter plot of the expense ratio and retained premium data between 1998 and 2022 and then determined a line of best fit to estimate the expense ratio on the basis of on-level retained premiums.

---

[2] While the deadline to submit the data has passed as of the date of this order, TDI is working with agents and agencies that missed the deadline or that need to provide data corrections.

f.  TDI and OPIC used the same experience periods, resulting in them using the same expense ratios, averaging 77.0%. TLTA's expense ratios were mostly higher, averaging 81.7%; this was attributable to the different experience periods and methods TLTA used.

g.  The loss and loss adjustment expense ratios used by all parties were similar, 2.3% for TLTA and 2.0% for OPIC and TDI, since this ratio shows little volatility over the various experience periods.

h.  For the catastrophe loss provision, all parties used 1.0%.

13. The various actuarial methods yielded the following results:

| Loss Ratio Methods | TLTA | OPIC | TDI |
|---|---|---|---|
| 5-year ending 2022 | | −19.0% | −15.4% |
| 10-year ending 2022 | | −15.6% | −11.8% |
| 15-year ending 2022 | | −12.5% | −8.6% |
| 20-year ending 2022 | −3.8% | −8.9% | −4.9% |
| 5-year ending 2019 | −4.6% | | |
| 3-year ending 2019 | −4.7% | | |
| Linear regression | −4.0% | | |
| 2023 estimate | 0.0% | | |
| *Overall range* | *0.0% to −4.7%* | *-8.9% to −19.0%* | *−4.9% to −15.4%* |

14. The commissioner has reviewed and evaluated all the information submitted in the TLTA, OPIC, and TDI reports. This information reflects the relevant income and expenses experienced by all title insurance companies and title insurance agents engaged in the business of title insurance in Texas.

Reasonable as to the Public

15. In recent history, the title industry's actual profit ratio has been consistently, and at times dramatically, above the target profit ratio used in setting the basic premium rates. The actual profit ratios earned by title agents and underwriters in Texas over different periods are as follows:

| Years of Data Included | Average Profit Ratio |
| --- | --- |
| 2003–2022 (20 years) | 17.5% |
| 2008–2022 (15 years) | 19.8% |
| 2013–2022 (10 years) | 24.6% |
| 2018–2022 (5 years) | 26.2% |
| 2015–2019 (5 years) | 22.2% |
| 2022 (1 year) | 26.6% |

16.     While the housing market saw a downturn in late 2022, due in part to increases in mortgage rates and median home prices, the average rate of return was 26.6%. When you compare this with the profit provisions used in TLTA's (12.0%), OPIC's (7.0%), and TDI's (11.0%) actuarial analyses, it shows that even as the market declines, there is a sizeable difference between what is considered an acceptable target for profit levels and the actual profits the market has been experiencing.

17.     Sustaining the current levels of profits in the current real estate market with the current levels of inflation would not be reasonable as to the public. Texans are being affected by housing affordability across the state. A reduction in title insurance basic premium rates would likely help bring the actual profit ratio closer to the target.

## Nonconfiscatory as to Title Insurance Companies and Agents

18.     A confiscatory rate is one that is too low to allow a regulated company to "not only recover its operating expenses, but also to realize reasonable returns on its investments."[3]

19.     The commissioner did not receive "clear and convincing evidence"[4] that a reduction in rates would lead the average title insurance company or title insurance agent to experience insolvency or earn an unreasonable rate of return.

---

[3] *Geeslin v. State Farm Lloyds*, 255 S.W.3d 786, 795 (Tex. App.—Austin 2008), citing *Duquesne Light Co. v. Barasch*, 488 U.S. 299, 307, 109 S.Ct. 609, 102 L.ED.2d 646 (1989); *Railroad Comm'n v. Houston Natural Gas Corp.*, 155 Tex. 502, 289 S.W.2d 559, 572 (1956).
[4] *Id.* at 795.

20. Between 2020 and 2022, the title industry in Texas experienced significant growth. The COVID pandemic and a dramatic reduction in interest rates led to an unprecedented increase in housing purchases and refinances.

21. To accommodate that increase, agencies have expanded, and more agents have entered the market. Since 2019, the number of licensed title agents in Texas has grown by 29%—from 614 agents in 2019 to 794 agents in 2024.

22. Industry-wide premiums went from $2.27 billion in 2019, to $2.69 billion in 2020, and $3.69 billion in 2021. In 2022, there was a slight decline to $3.38 billion, and 2023 saw a return to pre-pandemic premium levels at $2.38 billion. While the market has declined, the industry is still collecting significant premium.

23. While the rates must be nonconfiscatory for the industry, that does not mean that every licensed agent and agency should expect the same level of profitability. The average profit must be reasonable, but, as OPIC noted in its report, that is likely to result in some agents making large profits while others do not. Irrespective of the basic premium rate, the downturn in the market may result in underperforming agents seeing a lack of profitability.

24. Aside from TLTA's method that included its sampling of 2023 data, each of the methods from TLTA, OPIC, and TDI indicated a reduction in rates from −4.7% to −19.0%. Those methods used profit provisions of 12.0%, 7.0%, and 11.0%, respectively; and each entity's report asserts that its respective profit provision would be a reasonable rate of return.

## Conclusions of Law

1. The commissioner has jurisdiction over this matter under Insurance Code §§ 31.021, 2501.001–2501.008, 2551.003, and 2703.001–2703.208.

2. TDI gave proper and timely notice of the January 21, 2025, public hearing required by Insurance Code § 2703.203 and of its continuation to January 23, 2025, under Government Code § 551.0411.

3. Insurance Code § 2501.002 states that the purpose of the Texas Title Insurance Act is "to completely regulate the business of title insurance . . . to protect consumers and purchasers of title insurance policies and provide adequate and reasonable rates of return for title insurance companies and title insurance agents."

4.      Insurance Code § 2703.151 requires the commissioner to fix and promulgate the premium rates to be charged by title insurance companies and title insurance agents.

5.      Insurance Code § 2703.152 states that when fixing premium rates, the commissioner must "consider all relevant income and expenses of title insurance companies and title insurance agents attributable to engaging in the business of title insurance." The premium rates must be "reasonable as to the public and nonconfiscatory as to title insurance companies and title insurance agents."

6.      After considering the data collected under Insurance Code § 2703.153 and the reports provided by TLTA, OPIC, and TDI staff, the commissioner has determined that a 10% reduction in the title insurance basic premium rates takes all relevant income and expenses into account, is reasonable to the public, and is nonconfiscatory to title insurance companies and agents. This reduction will save Texas consumers an estimated $238 million per year.

**Order**

It is ordered that, effective July 1, 2025, title insurance companies and title insurance agents must use the basic premium rates reflected in Exhibit A.

Signed by:
FC5D7EDDFFBB4F8...

Cassie Brown
Commissioner of Insurance

Recommended and reviewed by:

Signed by:
Mark Worman
70ABE377123E401...

Mark Worman, Deputy Commissioner

Signed by:
Jessica Barta
5DAC5618BBC74D4...

Jessica Barta, General Counsel

# Exhibit A

# TEXAS TITLE INSURANCE BASIC PREMIUM RATES
## Rates Effective July 1, 2025

| Policy Face Amount Up to and Including | Basic Premium | Policy Face Amount Up to and Including | Basic Premium | Policy Face Amount Up to and Including | Basic Premium | Policy Face Amount Up to and Including | Basic Premium |
|---|---|---|---|---|---|---|---|
| $25,000 | $295 | $44,000 | $410 | $63,000 | $525 | $82,000 | $640 |
| 25,500 | 298 | 44,500 | 413 | 63,500 | 528 | 82,500 | 644 |
| 26,000 | 302 | 45,000 | 417 | 64,000 | 532 | 83,000 | 648 |
| 26,500 | 304 | 45,500 | 419 | 64,500 | 535 | 83,500 | 650 |
| 27,000 | 306 | 46,000 | 422 | 65,000 | 537 | 84,000 | 653 |
| 27,500 | 309 | 46,500 | 426 | 65,500 | 540 | 84,500 | 656 |
| 28,000 | 312 | 47,000 | 428 | 66,000 | 544 | 85,000 | 659 |
| 28,500 | 315 | 47,500 | 430 | 66,500 | 548 | 85,500 | 662 |
| 29,000 | 320 | 48,000 | 435 | 67,000 | 551 | 86,000 | 664 |
| 29,500 | 322 | 48,500 | 438 | 67,500 | 552 | 86,500 | 669 |
| 30,000 | 325 | 49,000 | 441 | 68,000 | 555 | 87,000 | 672 |
| 30,500 | 328 | 49,500 | 444 | 68,500 | 559 | 87,500 | 674 |
| 31,000 | 331 | 50,000 | 446 | 69,000 | 562 | 88,000 | 677 |
| 31,500 | 334 | 50,500 | 449 | 69,500 | 564 | 88,500 | 680 |
| 32,000 | 337 | 51,000 | 451 | 70,000 | 568 | 89,000 | 684 |
| 32,500 | 340 | 51,500 | 455 | 70,500 | 572 | 89,500 | 686 |
| 33,000 | 343 | 52,000 | 459 | 71,000 | 575 | 90,000 | 689 |
| 33,500 | 347 | 52,500 | 463 | 71,500 | 577 | 90,500 | 692 |
| 34,000 | 349 | 53,000 | 464 | 72,000 | 580 | 91,000 | 696 |
| 34,500 | 353 | 53,500 | 468 | 72,500 | 583 | 91,500 | 699 |
| 35,000 | 356 | 54,000 | 471 | 73,000 | 586 | 92,000 | 701 |
| 35,500 | 358 | 54,500 | 473 | 73,500 | 589 | 92,500 | 705 |
| 36,000 | 361 | 55,000 | 476 | 74,000 | 592 | 93,000 | 707 |
| 36,500 | 365 | 55,500 | 479 | 74,500 | 596 | 93,500 | 711 |
| 37,000 | 367 | 56,000 | 483 | 75,000 | 599 | 94,000 | 712 |
| 37,500 | 371 | 56,500 | 486 | 75,500 | 601 | 94,500 | 716 |
| 38,000 | 374 | 57,000 | 489 | 76,000 | 604 | 95,000 | 721 |
| 38,500 | 377 | 57,500 | 492 | 76,500 | 607 | 95,500 | 724 |
| 39,000 | 379 | 58,000 | 496 | 77,000 | 610 | 96,000 | 725 |
| 39,500 | 383 | 58,500 | 498 | 77,500 | 613 | 96,500 | 728 |
| 40,000 | 385 | 59,000 | 500 | 78,000 | 617 | 97,000 | 732 |
| 40,500 | 390 | 59,500 | 504 | 78,500 | 620 | 97,500 | 735 |
| 41,000 | 392 | 60,000 | 508 | 79,000 | 624 | 98,000 | 738 |
| 41,500 | 395 | 60,500 | 511 | 79,500 | 625 | 98,500 | 742 |
| 42,000 | 398 | 61,000 | 514 | 80,000 | 628 | 99,000 | 744 |
| 42,500 | 401 | 61,500 | 516 | 80,500 | 632 | 99,500 | 747 |
| 43,000 | 403 | 62,000 | 519 | 81,000 | 635 | 100,000 | 749 |
| 43,500 | 407 | 62,500 | 523 | 81,500 | 637 | | |

Title Basic Premium Calculation for Policies in
Excess of $100,000

Using the table below, apply these steps to determine basic premium for policies above $100,000:

Step 1     In column (1), find the range that includes the policy's face value.
Step 2     Subtract the value in column (2) from the policy's face value.
Step 3     Multiply the result in Step 2 by the value in column (3), and round to the nearest dollar.
Step 4     Add the value in column (4) to the result of the value from Step 3.

(See examples following the table.)

Title Basic Premium Calculation for Policies in Excess of $100,000

| (1)<br>Policy Range | (2)<br>Subtract | (3)<br>Multiply by | (4)<br>Add |
|---|---|---|---|
| [$100,001 - $1,000,000] | 100,000 | 0.00474 | $749 |
| [$1,000,001 -$5,000,000] | 1,000,000 | 0.00390 | $5,018 |
| [$5,000,001 - $15,000,000] | 5,000,000 | 0.00321 | $20,606 |
| [$15,000,001 - $25,000,000] | 15,000,000 | 0.00229 | $52,736 |
| [$25,000,001 - $50,000,000] | 25,000,000 | 0.00137 | $75,596 |
| [$50,000,001 - $100,000,000] | 50,000,000 | 0.00124 | $109,796 |
| [Greater than $100,000,000] | 100,000,000 | 0.00112 | $171,896 |

Examples for Policies in Excess of $100,000

Example 1:
(1) Policy is $268,500
(2) Subtract $100,000 ==> $268,500 -$100,000 ==> Result = $168,500
(3) Multiply by 0.00474==> $168,500 x 0.00474 ==> Result = $799
(4) Add $749 ==> $799 + $749 ==> Final Result = $1,548

Example 2:
(1) Policy is $4,826,600
(2) Subtract $1,000,000 ==> $4,826,600 -$1,000,000 ==> Result = $3,826,600
(3) Multiply by 0.00390 ==> $3,826,600 x 0.00390 ==> Result = $14,924
(4) Add $5,018 ==> $14,924 + $5,018 ==> Final Result = $19,942

Example 3:
(1) Policy is $10,902,800
(2) Subtract $5,000,000 ==> $10,902,800 -$5,000,000 ==> Result = $5,902,800
(3) Multiply by 0.00321 ==> $5,902,800 x 0.00321 ==> Result = $18,948
(4) Add $20,606 ==> $18,948 + $20,606 ==> Final Result = $39,554

Example 4:
(1) Policy is $17,295,100
(2) Subtract $15,000,000 ==> $17,295,100 -$15,000,000 ==> Result = $2,295,100
(3) Multiply by 0.00229==> $2,295,100 x 0.00229 ==> Result = $5,256
(4) Add $52,736 ==> $5,256 + $52,736 ==> Final Result = $57,992

Example 5:
(1) Policy is $39,351,800
(2) Subtract $25,000,000 ==> $39,351,800 - $25,000,0 00 ==> Result = $14,351,800
(3) Multiply by 0.00137 ==> $14,351,800 x 0.00137 ==> Result = $19,662
(4) Add $75,596 ==> $19,662 + $75,596 ==> Final Result = $95,258

Example 6:
(1) Policy is $75,300,200
(2) Subtract $50,000,000 ==> $75,300,200 -$50,000,000 ==> Result = $25,300,200
(3) Multiply by 0.00124 ==> $25,300,200 x 0.00124 ==> Result = $31,372
(4) Add $109,796 ==> $31,372 + $109,796 ==> Final Result = $141,168

Example 7:
(1) Policy is $151,250,300
(2) Subtract $100,000,000 ==> $151,250,300 - $100,000,000 ==> Result $51,250,300
(3) Multiply by 0.00112 ==> $51,250,300 x 0.00112==>Result = $57,400
(4) Add $171,896 ==> $57,400 + $171,896 ==> Final Result = $229,296

# EXHIBIT B

6/20/2025 12:00 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-001663
Rosa Oneal

Cause No. D-1-GN-25-001663

| | | |
|---|---|---|
| TEXAS LAND TITLE ASSOCIATION, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF | § | TRAVIS COUNTY, TEXAS |
| INSURANCE and CASSIE BROWN, | § | |
| IN HER CAPACITY AS | § | |
| COMMISSIONER OF THE TEXAS | § | |
| DEPARTMENT OF INSURANCE, | § | |
| *Defendants.* | § | 345TH JUDICIAL DISTRICT |

## NOTICE OF APPEAL TO THE FIFTEENTH COURT OF APPEALS

COME NOW Defendants, the Texas Department of Insurance and Cassie Brown, in her capacity as Commissioner of the Texas Department of Insurance (collectively "TDI"), through their counsel the Office of the Attorney General, and file this, their Notice of Appeal:

1. This is an appeal of two judgments issued by Judge Daniella DeSeta Lyttle, in the 261st Judicial District Court, Travis County, Texas, Cause Number D-1-GN-25-001663, styled *Texas Land Title Association v. Texas Department of Insurance and Cassie Brown, in her capacity as Commissioner of the Texas Department of Insurance.* It is, on the issues under Texas Civil Practices and Remedies Code section 51.014(a)(4) and (8), an accelerated interlocutory appeal.

2. The judgments appealed are the trial court's Order Granting Plaintiff's First Amended Application for Temporary Injunction, signed and filed May 30, 2025, [Attachment A] and the trial court's Order Overruling Texas Department of

Insurance and Cassie Brown's First Amended Plea to the Jurisdiction, also signed and filed May 30, 2025 [Attachment B].

3.     The parties filing this appeal are Defendants, Texas Department of Insurance and Cassie Brown, in her capacity as Commissioner of the Texas Department of Insurance.   The other party is Plaintiff Texas Land Title Association.

4.     This appeal is taken to the Fifteenth Court of Appeals, Austin, Texas. See Tex. Gov't Code § 22.220(a) and (d) (providing that the Fifteenth Court of Appeals has exclusive intermediate jurisdiction over a matter brought against a state commission or against an employee of an agency in the executive branch arising out of that employee's official conduct).   This appeal does not meet any of the exceptions found in Texas Government Code section 22.220(d)(1)(A)-(O).

5.     On May 30, 2025, Judge Lyttle signed the Order Granting Plaintiff's First Amended Application for Temporary Injunction, granting a Temporary Injunction in favor of the Plaintiffs and issuing other rulings including, but not limited to, granting Plaintiff's Petition for Review and remanding the matter to the Department for reconsideration and further proceedings.   [See Attachment A].   Also on May 30, 2025, Judge Lyttle signed the Order Overruling Texas Department of Insurance and Cassie Brown's First Amended Plea to the Jurisdiction.   [See Attachment B].

6.     The Texas Department of Insurance and Commissioner Cassie Brown, through their counsel, the Attorney General, desire to appeal under Rules 25.1, 26.1, 26.1(b), 27.1(a), 28.1, and 29 of the Texas Rules of Appellate Procedure and under

Texas Civil Practices and Remedies Code 51.014(a)(4) and (8) both the Temporary Injunction and other rulings in the trial court's May 30, 2025, Order Granting Plaintiff's First Amended Application for Temporary Injunction and the trial court's May 30, 2025, Order Overruling Texas Department of Insurance and Cassie Brown's First Amended Plea to the Jurisdiction.

7.      A copy of this Notice of Appeal has been served on all parties of record.

Respectfully Submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

ERNEST C. GARCIA
Chief, Administrative Law Division

/s/ *James Z. Brazell*
JAMES Z. BRAZELL
State Bar No. 02930100
Assistant Attorney General
ROSALIND HUNT
State Bar No. 24067108
Assistant Attorney General
Administrative Law Division
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone:   (512) 475-3204
Facsimile:    (512) 320-0167
James.Brazell@oag.texas.gov

ATTORNEYS FOR DEFENDANTS TEXAS DEPARTMENT OF INSURANCE AND CASSIE BROWN, IN HER CAPACITY AS COMMISSIONER OF THE TEXAS DEPARTMENT OF INSURANCE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Notice of Appeal has been served on June 19, 2025, in compliance with Texas Rule of Civil Procedure 21a to the following party:

RAY C. CHESTER
State Bar No. 04189065
ANDREW M. EDGE
State Bar No. 24071446
MCGINNIS LOCHRIDGE LLP
1111 W. 6th Street, Bldg. B, Suite 400
Austin, Texas 78703
Telephone:     (512) 495-6000
Facsimile:     (512) 495-6093
rchester@mcginnislaw.com
aedge@mcginnislaw.com

ATTORNEYS FOR PLAINTIFF
TEXAS LAND TITLE ASSOCIATION


/s/ *James Z. Brazell*
JAMES Z. BRAZELL
Assistant Attorney General

CAUSE NO. D-1-GN-25-001663

| | | |
|---|---|---|
| TEXAS LAND TITLE ASSOCIATION, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF INSURANCE | § | TRAVIS COUNTY, TEXAS |
| AND CASSIE BROWN, IN HER | § | |
| CAPACITY AS COMMISSIONER OF THE | § | |
| TEXAS DEPARTMENT OF INSURANCE, | § | |
| | § | |
| *Defendants*. | § | |
| | § | 345TH JUDICIAL DISTRICT |

## <u>ORDER GRANTING PLAINTIFF'S FIRST AMENDED APPLICATION FOR TEMPORARY INJUNCTION</u>

On May 27-28, 2025, the Court heard Plaintiff's Original Petition and Application for Temporary Injunction filed on March 6, 2025, and as amended on May 28, 2025, solely to include a verification as provided in Plaintiff's First Amended Original Petition and Application for Temporary Injunction.

The Court FINDS that Defendants waived the insufficiency of verification to support Plaintiff's original application for injunctive relief, by Defendants' failure to timely object thereto before the Court heard evidence pertaining to the requested injunctive relief. *Russell v. City of Dallas*, No. 05-13-00061-CV, 2014 Tex. App. LEXIS 5339, at * 9–10 (Tex. App.—Dallas 2014, pet. denied, cert. denied 574 U.S. 1048 (2014)).

After considering the evidence and arguments of counsel, the Court FINDS Defendants did not strictly comply with the rulemaking requirements of Texas Insurance Code section 2703.202, subdivision (c), in connection with the issuance of Commissioner's February 6, 2025 order number 2025-9125 (Commissioner's Order 2025-9125).

The Court FURTHER FINDS that Commissioner's Order 2025-9125 dictates a new set of basic premium rates as set forth in the "Exhibit A" attached to that order, which will take effect on July 1, 2025, and its application to Plaintiff interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

IT IS THEREFORE ORDERED that Plaintiff's Petition for Review of Commissioner's Order 2025-9125 is GRANTED.

IT IS FURTHER ORDERED that this matter is hereby REMANDED to the Texas Department of Insurance for reconsideration of Commissioner's Order 2025-9125, and for further proceedings as may be necessary before that agency, to include but is not limited to additional income and expenses data used to fix premium rates for the year of 2023 and beyond, which were incomplete or previously unavailable and as recognized by the Commissioner's Order in her Findings of Fact 12(d) and its attendant footnote 2.

The Court FURTHER FINDS that Plaintiff is without adequate remedies at law, absent a temporary injunction of Commissioner's Order 2025-9125 at this time.

IT IS THEREFORE ORDERED that Plaintiff's First Amended Application for Temporary Injunction is GRANTED.

IT IS ORDERED that Defendants are hereby ENJOINED from enforcing Commissioner's Order 2025-9125, and that order is hereby STAYED, pending final disposition of this matter. This injunction is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

IT IS FURTHER ORDERED that this cause is hereby set for trial on the merits to commence on December 1, 2025, and as the Court may further order.

IT IS FURTHER ORDERED that this Order not be effective unless and until Plaintiff executes and files with the Clerk a bond, in conformity with the law, payable to Defendants in the amount of $2,500.

SIGNED on May 30, 2025,

_____
DANIELLA DESETA LYTTLE
Judge Presiding, 261st District Court

# Attachment B

CAUSE NO. D-1-GN-25-001663

| | | |
|---|---|---|
| TEXAS LAND TITLE ASSOCIATION, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF INSURANCE | § | TRAVIS COUNTY, TEXAS |
| AND CASSIE BROWN, IN HER | § | |
| CAPACITY AS COMMISSIONER OF THE | § | |
| TEXAS DEPARTMENT OF INSURANCE, | § | |
| | § | |
| *Defendants*. | § | |
| | § | 345TH JUDICIAL DISTRICT |

## ORDER OVERRULING TEXAS DEPARTMENT OF INSURANCE AND CASSIE BROWN'S FIRST AMENDED PLEA TO THE JURISDICTION

On May 27-28, 2025, the Court heard Texas Department of Insurance and Cassie Brown's First Amended Plea to the Jurisdiction filed on May 20, 2025 (Plea).

After considering the evidence and arguments of counsel, the Court FINDS that it has subject-matter jurisdiction under Texas Insurance Code section 36.201 and Texas Government Code section 2001.038, subdivision (a), to conduct judicial review of the Commissioner's actions as alleged in Plaintiff's Original Petition and Application for Temporary Injunction filed on March 6, 2025, and as amended on May 28, 2025. The Court therefore FINDS that Defendants' sovereign immunity has been statutorily waived.

IT IS THEREFORE ORDERED that the Plea is OVERRULED.

SIGNED on May 30, 2025,

_____
DANIELLA DESETA LYTTLE
Judge Presiding, 261st District Court

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meridith Fischer on behalf of James Brazell
Bar No. 2930100
meridith.fischer@oag.texas.gov
Envelope ID: 102206362
Filing Code Description: Notice of Appeal
Filing Description: NOTICE OF APPEAL TO THE FIFTEENTH COURT OF APPEALS
Status as of 6/20/2025 8:35 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew MEdge | | aedge@mcginnislaw.com | 6/19/2025 1:30:49 PM | SENT |
| Ray Chester | | rchester@mcginnislaw.com | 6/19/2025 1:30:49 PM | SENT |
| Kim McBride | | kmcbride@mcginnislaw.com | 6/19/2025 1:30:49 PM | SENT |

Associated Case Party: TEXAS DEPARTMENT OF INSURANCE

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rosalind Hunt | | rosalind.hunt@oag.texas.gov | 6/19/2025 1:30:49 PM | SENT |
| Jennifer Foster | | Jennifer.Foster@oag.texas.gov | 6/19/2025 1:30:49 PM | SENT |
| James Z.Brazell | | james.brazell@oag.texas.gov | 6/19/2025 1:30:49 PM | SENT |
| Meridith Fischer | | Meridith.Fischer@oag.texas.gov | 6/19/2025 1:30:49 PM | SENT |

# EXHIBIT C

# Travis County District Court enjoins the change to title insurance basic premium rates

*Texas Department of Insurance sent this bulletin at 06/12/2025 10:12 AM CDT*

View as webpage

**TDI | Texas Department of Insurance**

The Travis County District Court has issued a temporary injunction order enjoining the enforcement of Commissioner Order No. 2025-9125. Because of the court's action, the change to title insurance basic premium rates under Order 2025-9125 will *not* go into effect on July 1. Title insurance companies and agents should continue to use the current rates contained in the Title Insurance Basic Manual until further notice.

# EXHIBIT D

CAUSE NO. D-1-GN-25-001663

| | | |
|---|---|---|
| TEXAS LAND TITLE ASSOCIATION, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF INSURANCE | § | TRAVIS COUNTY, TEXAS |
| AND CASSIE BROWN, IN HER | § | |
| CAPACITY AS COMMISSIONER OF THE | § | |
| TEXAS DEPARTMENT OF INSURANCE, | § | |
| | § | |
| *Defendants*. | § | |
| | § | 345TH JUDICIAL DISTRICT |

## ORDER GRANTING PLAINTIFF'S FIRST AMENDED APPLICATION FOR TEMPORARY INJUNCTION

On May 27-28, 2025, the Court heard Plaintiff's Original Petition and Application for Temporary Injunction filed on March 6, 2025, and as amended on May 28, 2025, solely to include a verification as provided in Plaintiff's First Amended Original Petition and Application for Temporary Injunction.

The Court FINDS that Defendants waived the insufficiency of verification to support Plaintiff's original application for injunctive relief, by Defendants' failure to timely object thereto before the Court heard evidence pertaining to the requested injunctive relief. *Russell v. City of Dallas*, No. 05-13-00061-CV, 2014 Tex. App. LEXIS 5339, at * 9–10 (Tex. App.—Dallas 2014, pet. denied, cert. denied 574 U.S. 1048 (2014)).

After considering the evidence and arguments of counsel, the Court FINDS Defendants did not strictly comply with the rulemaking requirements of Texas Insurance Code section 2703.202, subdivision (c), in connection with the issuance of Commissioner's February 6, 2025 order number 2025-9125 (Commissioner's Order 2025-9125).

The Court FURTHER FINDS that Commissioner's Order 2025-9125 dictates a new set of basic premium rates as set forth in the "Exhibit A" attached to that order, which will take effect on July 1, 2025, and its application to Plaintiff interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

IT IS THEREFORE ORDERED that Plaintiff's Petition for Review of Commissioner's Order 2025-9125 is GRANTED.

IT IS FURTHER ORDERED that this matter is hereby REMANDED to the Texas Department of Insurance for reconsideration of Commissioner's Order 2025-9125, and for further proceedings as may be necessary before that agency, to include but is not limited to additional income and expenses data used to fix premium rates for the year of 2023 and beyond, which were incomplete or previously unavailable and as recognized by the Commissioner's Order in her Findings of Fact 12(d) and its attendant footnote 2.

The Court FURTHER FINDS that Plaintiff is without adequate remedies at law, absent a temporary injunction of Commissioner's Order 2025-9125 at this time.

IT IS THEREFORE ORDERED that Plaintiff's First Amended Application for Temporary Injunction is GRANTED.

IT IS ORDERED that Defendants are hereby ENJOINED from enforcing Commissioner's Order 2025-9125, and that order is hereby STAYED, pending final disposition of this matter. This injunction is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

IT IS FURTHER ORDERED that this cause is hereby set for trial on the merits to commence on December 1, 2025, and as the Court may further order.

IT IS FURTHER ORDERED that this Order not be effective unless and until Plaintiff executes and files with the Clerk a bond, in conformity with the law, payable to Defendants in the amount of $2,500.

SIGNED on May 30, 2025,

_____
DANIELLA DESETA LYTTLE
Judge Presiding, 261st District Court